# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
### SOUTHERN DIVISION

GLYNN JONES, JR.,

      Plaintiff,

                                  Case No.

-v-                                 Hon.

CITY OF OAK PARK, a Michigan Municipal
Corporation; and CITY OF CENTERLINE,
a Michigan Municipal Corporation; OAK PARK
DEPARTMENT OF PUBLIC SAFETY DIRECTOR
STEVE COOPER, Individually and in his Official
Capacity; OAK PARK DEPARTMENT OF
PUBLIC SAFETY OFFICERS BRIAN BARKER,
ROBERT KOCH AND DEVIN BENSON,
Individually and in their Official Capacities;
CENTERLINE DEPARTMENT OF PUBLIC
SAFETY DIRECTOR PAUL MYSZENSKI,
Individually and in his Official Capacity; and
CENTERLINE DEPARTMENT OF PUBLIC
SAFETY OFFICER CURT WINN, Individually and
in his Official Capacity.

      Defendants.

---

TODD F. FLOOD (P58555)
LAWRENCE B. SHULMAN (P45075)
Flood Law PLLC
Attorneys for Plaintiff
401 North Main Street
Royal Oak, Michigan 48067
Tel: (248) 547-1032
Fax: (248) 547-0140
tflood@floodlaw.com

---

- 1 -

## COMPLAINT AND JURY DEMAND

NOW COMES the Plaintiff, GLYNN JONES, JR., by and through counsel, Flood Law PLLC, and for his Complaint against the above-named Defendants, states the following:

## PRELIMINARY STATEMENT

1.      This is a civil rights action in which the Plaintiff, Glynn Jones, seeks relief for the defendants' violations of his rights secured by 42 U.S.C. §1983 and §1988; The United States Constitution, including its Fourth and Fourteenth Amendments; the laws of the State of Michigan, including §§ 2 and 11 of the Michigan Constitution of 1963, and Michigan common law. Plaintiff seeks money damages, an award of costs, interest and attorney fees, and such other and further relief as this Court deems just and proper – for a series of events in which Mr. Jones was arrested and charged with a number of bank robberies he did not commit; incarcerated and restricted in his liberties for a period during which the police failed to properly investigate both the crimes that had occurred and Mr. Jones' accurate and truthful claims of innocence; and continued to be prosecuted even after it was evident that Mr. Jones had not committed any crime.

## JURISDICTION AND VENUE

2.      This action is brought pursuant to 42 USC §§ 1983 and 1988, and the Fourth and Fourteenth Amendments to the United States Constitution. Jurisdiction is

conferred upon this court by 28 U.S.C. §§ 1331and 1343, this being an action seeking redress for the violation of the plaintiff's constitutional and civil rights.

3. Plaintiff further invokes this court's supplemental jurisdiction, pursuant to 28 USC section 1367, over any and all state law claims and against all parties that are so related to claims in this action, within the original jurisdiction of this court, that they form part of the same case or controversy.

4. Venue is proper under 28 U.S.C. §1391(b) and (c), in that all parties are residents and/or administratively located within the Eastern District of Michigan, and the events giving rise to this claim occurred within the boundaries of the Eastern District of Michigan.

## **PARTIES**

5. At all times relevant to this action, Plaintiff, Glynn Jones, was a resident of the City of Sterling Heights, County of Macomb, State of Michigan.

6. Defendants City of Oak Park and City of Center Line are municipal entities existing under the laws of the State of Michigan. Plaintiff sues Defendants in their individual and official capacities. Both Cities are authorized by law to maintain Departments of Public Safety, which act as their agents in the area of law enforcement and for which they are ultimately responsible. Defendant Cities assume the risks incidental to the maintenance of a public safety/ police force and the employment of public safety officers. The defendant Cities were, at all times relevant to this matter,

the public employers of the individual public safety defendants named in the complaint.

7. Defendant Steve Cooper is the Public Safety Director of Defendant City of Oak Park and at all times mentioned in this complaint was acting under the color of law and color of his authority as the Public Safety Director of Oak Park, Michigan.

8. Defendant Paul Myszenski is the Public Safety Director of Defendant City of Centerline and at all times mentioned in this complaint was acting under the color of law and color of his authority as the Public Safety Director of Centerline, Michigan.

9. Defendants Cooper and Myszenksi, as Public SafetyDdirectors of the Defendant Cities were responsible for the acts of the public safety officers of their respective departments while engaged in the performance of their duties as public safety officers, and were responsible for the proper supervision of their officers. Defendants Cooper and Myszenksi, as Public Safety Directors, were also responsible for the ongoing training of their respective public safety officers to ensure that those officers were competent to carry out their assigned duties.

10. Defendants Brian Barker, Robert Koch and Devin Benson were at all times relevant herein duly appointed and acting officers, servants, employees and agents of the Oak Park Department of Public Safety, a municipal agency of the city of Oak Park. At all times relevant herein the individual defendants were acting under color of the laws, statutes, ordinances, regulations, policies, customs and/or usages of

- 4 -

the state of Michigan and the Oak Park Department of Public Safety, in the course and scope of their duties and functions as officers, agents, servants, and employees of defendant cities; were acting for, and on behalf of, and with the power and authority vested in them by the city and the Department of Public Safety; and were otherwise performing in engaging in conduct incidental to the performance of their lawful functions in the course of their duties. They are sued individually and in their official capacity.

11. Defendant Curt Winn was at all times relevant herein a duly appointed and acting officer, servant, employee and agent of the Centerline Department of Public Safety, a municipal agency of the City of Centerline. At all times relevant herein the individual defendant was acting under color of the laws, statutes, ordinances, regulations, policies, customs and/or usages of the state of Michigan and the Centerline Department of Public Safety, in the course and scope of his duties and functions as an officer, agent, servant, and employee of defendant city, was acting for, and on behalf of, and with the power and authority vested in him by the city and the Department of Public Safety, and was otherwise performing and engaging in conduct incidental to the performance of his lawful functions in the course of his duties. He is sued individually and in his official capacity

12. By the conduct, acts, and omissions complained of herein, defendants Barker, Koch, Benson and Winn ("the Detectives") violated clearly establish constitutional standards under the Fourth and Fourteenth amendments to the United

States Constitution of which a reasonable police officer under the circumstances would have known.

## BACKGROUND FACTS

13. Glynn Jones is a 42-year old father and long-time automotive worker, with no criminal history.

14. On May 6, 2014, an individual robbed the Comerica Bank branch located at 25192 Greenfield Road in Oak Park, Michigan.

15. On May 12, 2014, the same individual again robbed the same Comerica Bank branch in Oak Park. The Oak Park Department of Public Safety (OPDPS) was able to obtain photos and video from both robberies.

16. On May 19, 2014, the Center Line Police Department (CLDPS) responded to a reported armed robbery at the PNC Bank on Van Dyke Road in Centerline, Michigan. The robber matched the description of the person who had twice robbed the Oak Park Comerica branch. The CLDPS obtained pictures and video from the bank.

17. Upon speaking with witnesses, the CLDPS determined that the robber, described as a black male, fled PNC Bank in a silver Ford Focus.

18. On or about May 19, 2014, the CLDPS provided a photograph of the suspect to local news agencies, which CLDPS obtained from PNC Bank's security cameras.

19.     According to Centerline police reports, on or about May 20, 2014, Sergeant Grace of the CLDPS received two anonymous tips, by phone, indicating that the callers had seen the photograph on the news, and the person in the photographs looked like Glynn Jones.

20.     Other robberies were committed by the same person, in Lathrup Village, Michigan on March 25, 2014 and April 14, 2014, and in Berkley, Michigan on April 24, 2014. According to Centerline Department of Public Safety reports, the demand letter used by the robber in each of these incidents was similar. In each robbery, the police were also able to obtain detailed descriptions of the clothing that the robber wore. It further appeared that the robber wore the same distinctive pair of shoes, and similar Nike apparel, during all of the reported robberies.

21.     On or about May 20, 2014, Detective Winn of the CLDPS and Detective Barker of the Oak Park Department of Public Safety (OPDPS) decided to conduct photographic line-ups using a picture of Mr. Jones obtained from the Secretary of State. The line-up conducted at the CLDPS included a photograph of Mr. Jones and pictures of five other individuals. Of the two PNC Bank tellers who viewed the line-up, one selected the photograph of Mr. Jones and the other "was unable to positively identify the subject." Detective Barker then conducted a photographic lineup at the OPPD, also using six photographs, during which the two tellers from the Oak Park Comerica Bank robberies selected the photograph of Mr. Jones. Neither the CLDPS nor OPDPS ever attempted to conduct a live line-up that included Mr. Jones.

22.     Neither the CLDPS nor the OPDPS, nor the Detectives, conducted any meaningful investigation of Mr. Jones between the time the photographic line-ups were conducted, and the date on which a warrants were sought for Mr. Jones's arrest. No other evidence connected Mr. Jones to the robberies or the robbery scenes.

23.     Rather, on or about May 22, 2014, Centerline Police Detectives sought and obtained an arrest warrant for Mr. Jones for a charge of Armed Robbery, a capital offense, pursuant to MCL750.529. Upon information and belief, the CLDPS obtained a search warrant for Mr. Jones's residence, in Sterling Heights, and his two vehicles, at the same time.

24.     On May 22, 2014, the Warren Police Department Special Response Team ("Warren SRT") and Centerline Police Department, including Detective Winn, forcefully entered Mr. Jones's apartment, without knocking, to execute the search warrant and arrest Mr. Jones. The OPDPS, including Detectives Koch, Barker and Benson, also participated in the search of the apartment.

25.     In the process of executing the search warrant for Mr. Jones's residence and vehicles, and during the later booking process, Police Officers seized, but did not properly account for or maintain, a diamond earring, Mr. Jones's medications, and designer sunglasses, all belonging to Mr. Jones. To date, the Police have failed to return Mr. Jones's belongings.

26. Additionally, the Police searched the residence without any care for Mr. Jones' belongings, and damaged multiple things and areas of Mr. Jones's residence during their raid. Mr. Jones' residence was left in shambles following the raid.

27. Critically, Mr. Jones did not own clothing or shoes that matched the description of the robber, and none was found during an extremely thorough and forceful search of the premises. After he was detained and arrested, Mr. Jones was asked for, and agreed to provide, his cellular telephone number to the police. It is commonly known that the police obtain information on cell phone usage from cell phone service providers and that the information can be used to determine where a phone may have been located at a particular time.

28. During the raid at his residence, Mr. Jones was placed on his floor, handcuffed, arrested and transported to the Centerline Police Department. He was removed from his apartment, in handcuffs and in the physical control of uniformed police officers, in full view of his neighbors.

29. Mr. Jones was then subjected to repeated interrogations, over a significant period of time, in a locked room at the CLDPS, by multiple teams of detectives, during which he was repeatedly accused of robbing the banks. Mr. Jones was adamant that he was not involved in any bank robbery. Despite his denials, the Detectives, including Detective Koch of the OPDPS repeatedly asked improper an unfair questions of Mr. Jones, that were specifically designed to raise an inference of guilt to a later fact-finder and distort the truth-seeking goal of the investigative

process, even though Mr. Jones was unflinching in his statements that he was not involved in the bank robberies.

30. During his interrogations, Mr. Jones was asked by the Detectives if he would take a polygraph examination, supporting his innocence. Mr. Jones readily agreed to take one.

31. Mr. Jones was forced to spend the night of May 22, 2014 in the Macomb County Jail, before his arraignment was conducted.

32. On May 23, 2014, Mr. Jones was arraigned in Macomb County on the charge of Armed Robbery. Despite having committed no crime, he was forced to hire a bail bondsman, in order to be released on the $75,000 bond the magistrate imposed in the case. The bondsman's non-refundable fee for posting this bond was $7,500. Mr. Jones was released from the jail, on bond, on May 23, 2014.

33. On May 28, 2014, the PNC Bank in Centerline was again robbed by the same person who had robbed the other banks. CLDPS Detective Winn asked the Sterling Heights Police Department to drive past Mr. Jones's apartment, and learned that both of Mr. Jones's cars were still in the parking lot. Detective Winn did not have anyone attempt to contact Mr. Jones directly despite the obvious exculpatory import of such contact, if it had been made, nor did he direct any additional surveillance on Mr. Jones. Detective Winn, however, notified the OPDPS Detectives of the new robbery, the request made to the Sterling Heights PD, and the decision to not to contact Mr. Jones.

- 10 -

34. Despite having previously obtained Mr. Jones's cell phone number, there was no immediate attempt by CLDPS or OPDPS detectives to obtain cell phone records, including location information that would have provided exculpatory evidence, in the form of confirmation that Mr. Jones was nowhere near Centerline at the time PNC Bank was robbed on May 28, 2015. Likewise, neither CLDPS nor OPDPS Detectives obtained and reviewed cell phone records, covering the dates for the other robberies in their respective jurisdictions, before seeking charges against Mr. Jones.

35. Instead, on May 30, 2014, having conducted no further meaningful investigation, OPDPS obtained a warrant for the arrest of Mr. Jones on four counts of Bank Robbery, a capital offense, contrary to MCL 750.531.

36. On June 2, 2014, Mr. Jones dropped off his 6-year old daughter at school in Grosse Ile, Michigan. As he was departing from the island, and in full view of some of the parents of his daughter's schoolmates, Mr. Jones's vehicle was surrounded by a number of police cars. Police Officers, with guns drawn, ordered Mr. Jones to exit his car, whereupon he was handcuffed, arrested and put into a police car. He was transported to the Oak Park Department of Public Safety.

37. After Mr. Jones was booked in Oak Park, bond was set by the magistrate at $50,000, with a further condition that if bond was posted, Mr. Jones would be required to wear a tether and abide by further restrictions on when he could leave his home, as imposed by the Court.

38. Mr. Jones was again forced to hire a bondsman, but couldn't immediately afford the non-refundable fee of $5,000 that was required. As a result, Mr. Jones was incarcerated in the Oakland County Jail from June 2, 2015 until June 9, 2015.

39. After his release, Mr. Jones's ability to spend the summer with his daughter was extremely limited, because of malfunctions in the tether unit and restrictions imposed by the Court that kept him confined to his apartment complex in Sterling Heights for the majority of the day and night.

40. Despite their knowledge that CLDPS and OPDPS had arrested Mr. Jones, the FBI– which was also looking in the bank robberies – indicated directly to the CLPD and OPDPS Detectives that they were continuing to look for the suspect in these robberies, and did not believe that Mr. Jones had robbed any banks. In fact, the same suspect continued his activities, robbing a Comerica Bank in Pleasant Ridge on July 17, 2014 and a Fifth Third Bank in Royal Oak on August 30, 2014. The true robber was later identified, arrested and prosecuted in Federal Court in Detroit.

41. OPDPS Detectives served a search warrant on Mr. Jones's cellular telephone carrier on May 27, 2014. Upon information and belief, the records were obtained in a matter of days, and location information contained in the records placed Mr. Jones well outside the vicinity of the bank robberies that Oak Park was investigating, at the relevant dates and times.

42. The CLDPS Detectives did not obtain and serve a search warrant for cellular telephone records until June 18, 2014. Upon information and belief, these records were also obtained in a matter of days, and location information contained in the records also placed Mr. Jones well outside the vicinity of the bank robberies that Centerline was investigating, at the relevant dates and times.

43. Mr. Jones passed separate polygraph examinations regarding the robberies in Oak Park and Centerline, respectively. The results of the polygraph were shared with OPDPS, the Oakland County Prosecutor's Office, the CLDPS and the Macomb County Prosecutor's Office on or about June 18, 2014.

44. Despite the allegations stated in the paragraphs above, the CLDPS and Macomb County Prosecutor's Office continued in the prosecution of their case against Mr. Jones, with all resulting restrictions on his liberty set by the District Court continuing in full force until July 2, 2014. On that date, the Macomb County Prosecuting Attorney's Office moved for dismissal.

45. While the charge in Centerline was dismissed and the bond has been discharged, Mr. Jones has not been reimbursed in any way for the $7,500 fee that has been paid to the bondsman, nor for the attorney fees and expenses that he was wrongfully forced to incur, in addition to other damages described below. There has been no statement by the CLDPS and its Detectives, or the Macomb County Prosecutor's Office that acknowledges Mr. Jones is actually innocent of the charges levied against him.

46.     Despite the allegations stated in the paragraphs above, and knowledge that the Centerline case had been dismissed, the OPDPS and Oakland County Prosecutor's Office continued in the prosecution of their case against Mr. Jones, with all resulting restrictions on his liberty set by the District Court, until August 5, 2014. On that date, the Oakland County Prosecuting Attorney's Office moved for dismissal, but indicated only that "[a]fter further investigation, the People cannot sustain their burden of proving the case beyond a reasonable doubt."

47.     While the charges in Oak Park were dismissed and the bond has been discharged, Mr. Jones has not been reimbursed in any way for the $5,000 fee that has been paid to the bondsman, or the substantial attorney fees and expenses that he was wrongfully forced to incur, in addition to other substantial damages described below. There has been no statement by the OPDPS and its Detectives, or the Oakland County Prosecutor's Office that acknowledges Mr. Jones is actually innocent of the charges levied against him.

**ADDITIONAL COMMON ALLEGATIONS**

48.     The acts of individual Defendants alleged in this Complaint represent official policy and custom of, and are attributable to, the Defendant entities for which such individuals worked.

49.     The acts complained of were under color of state law and undertaken in concert among the named Defendants.

- 14 -

50.     Supervisory officials having final policymaking authority for each of the Defendant entities named in this Complaint have knowledge of the conduct complained of.

51.     With regard to each and every one of the constitutional deprivations alleged below, it would have been plainly obvious to a reasonable policymaker that the conduct described did deprive or would lead to deprivations of Plaintiff's constitutional rights.

52.     Upon information and belief, supervisory officials having final policymaking authority for each of the Defendant entities named in this Complaint nevertheless agreed to, approved, and ratified the unconstitutional conduct alleged.

53.     The Defendant entities, by and through their supervisory officials having final policymaking authority, further failed to train the individually named Defendants. This failure to train led directly to the constitutional deprivations alleged below.

54.     The Defendant Public Safety Directors were negligent in training Defendant Public Safety Officers in areas including, but not limited to proper police investigation, and as a result of that negligence the matters alleged in this complaint occurred.

WHEREFORE, Plaintiff requests this Court enter judgment against Defendants in whatever amount he may be found to be entitled, together with interest, costs, reasonable attorney fees, and other such relief as this Court deems just under the circumstances.

## COUNT I
## VIOLATION OF CIVIL RIGHTS PURSUANT TO TITLE 42 U.S.C. § 1983
### Violation of Plaintiff's Fourth and Fourteenth Amendment Rights
*Against Defendants City of Oak Park and City of Centerline*

55.     Plaintiff repeats and re-alleges paragraphs 1 through 50, as if set forth fully herein.

56.     Plaintiffs had the right to be protected from unreasonable seizure, guaranteed by the Fourth Amendment to the United States Constitution, and incorporated against the States by the Fourteenth Amendment.

57.     Defendants City of Oak Park and City of Centerline, through their Department of Public Safety and Police Department, respectively, violated Plaintiff's constitutionally protected right against unreasonable seizure when the Individual Public Safety Defendants participated in unlawful seizures, arrests, detentions, imprisonments and prosecutions of the Plaintiff, and when the supervisory Defendants failed to properly train their subordinates and failed to intervene in constitutional violations.

58.     All of the Defendants promulgated and/or carried out the acts and omissions, official policies, orders and directives described above intentionally and deliberately, with wanton and reckless disregard and deliberate indifference for the civil and constitutional rights, privileges and sensibilities of Plaintiffs.

59.     As a direct and foreseeable consequence of Defendant Cities' acts and policy decisions, failure to train, failure to properly supervise, and failure to intervene in a custom of violating individuals' constitutional rights, Plaintiff was deprived of his rights under the Fourth and Fourteenth Amendment to the United States Constitution and thereby suffered loss of his freedom, economic damages, loss of reputation and severe emotional injury.

WHEREFORE, Plaintiff requests this Court enter judgment against Defendants in whatever amount he may be found to be entitled, together with interest, costs, reasonable attorney fees, and other such relief as this Court deems just under the circumstances.

## COUNT II
## VIOLATION OF CIVIL RIGHTS PURSUANT TO TITLE 42 U.S.C. § 1983
### Violation of Plaintiff's Fourth and Fourteenth Amendment Rights
*Against Individual Defendants in their Individual and Official Capacities*

60.     Plaintiff repeats and re-alleges paragraphs 1-55, as if set forth fully herein.

61.     The Individual Defendants violated Plaintiff's Fourth Amendment rights, as set forth above, by unlawfully seizing, arresting, detaining, imprisoning, and continuing the prosecution of Plaintiff, under the color of law and color of authority.

62.     The Individual Defendants promulgated and/or carried out the acts and omissions, official policies, orders and directives described above intentionally and

deliberately, with wanton and reckless disregard and deliberate indifference for the civil and constitutional rights, privileges and sensibilities of Plaintiff.

63.     As a direct and foreseeable consequence of Defendants' actions, Plaintiff was deprived of his rights under the Fourth and Fourteenth Amendments of the United States Constitution to be free from unreasonable seizure, and of his right not to be deprived of life, liberty or personal property without due process of law, and thereby suffered loss of his freedom, economic damages, loss of reputation and severe emotional injury.

WHEREFORE, Plaintiff requests this Court enter judgment against Defendants in whatever amount he may be found to be entitled, together with interest, costs, reasonable attorney fees, and other such relief as this Court deems just under the circumstances.

## STATE LAW CLAIMS

### COUNT III
### DEPRIVATION OF RIGHTS UNDER MICHIGAN CONSTITUTION
*Against All Defendants*

64.     Plaintiff repeats and re-alleges paragraphs 1-63, as if set forth fully herein.

65.     Plaintiff has the rights under Michigan's Constitution, among others –

    a.   To be free from unreasonable seizure;

    b.   To fair and just treatment in the course of an investigation;

    c. To be free from deprivations of his liberty interests without due process of law;

    d. To be afforded equal protection of the law.

66. Defendants, by virtue of custom and policy and under color of law, have violation Plaintiff's rights conferred by the Michigan Constitution by, among other things –

    a. Subjecting him to unreasonable seizure without probable cause;

    b. Denying him fair treatment in the course of an investigation;

    c. Subjecting him to deprivations of his liberty interest without due process of law; and

    d. Denying him equal protection of the law.

67. The foregoing acts were intentional, unlawful, unprivileged, and without protection of any immunity.

68. As a direct and foreseeable consequence of Defendants' actions, in violation of Plaintiff's constitutional rights, Plaintiff suffered humiliation, mortification, imprisonment, overwhelming stress, embarrassment, sleeplessness and anxiety, economic damages, loss of reputation and severe emotional injury.

WHEREFORE, Plaintiff requests this Court enter judgment against Defendants in whatever amount he may be found to be entitled, together with interest, costs, reasonable attorney fees, and other such relief as this Court deems just under the circumstances.

## COUNT IV
## DEFAMATION
*Against All Defendants*

69.    Plaintiff repeats and re-alleges paragraphs 1-68, as if set forth fully herein.

70.    The statement that Plaintiff committed a robbery at the Comerica Bank Branch, in Oak Park, Michigan, on May 6, 2014 is false.

71.    The statement that Plaintiff committed a robbery at the Comerica Bank Branch, in Oak Park, Michigan, on May 12, 2014 is false.

72.    The statement that Plaintiff committed a robbery at the PNC Bank Branch, in Centerline, Michigan, on May 19, 2014 is false.

73.    Defendants verbally published such remarks, as described above, with knowledge of the falsity of the statements or in reckless disregard of their truth or falsity,

74.    When they made these statements, Defendants were not acting within the scope of their authority, nor could they have reasonable believed they were acting within the scope of their authority.

75.    The above publications were not privileged.

76.    The above statements constituted defamation per se.

77.    Defendants' conduct in this matter, which proximately caused Plaintiff's injuries and damages, was grossly negligent because it was so reckless that it

demonstrated a substantial lack of concern for Plaintiff's physical and emotional well-being.

78.     The publication of these remarks has resulted in damage to Plaintiff's reputations in the community, emotional distress, humiliation, mortification, embarrassment, sleeplessness and anxiety and other damage that may arise during the course of discovery.

79.     The published statements portray Plaintiff in a false light.

80.     The Defendants have failed to retract the published statements.

WHEREFORE, Plaintiff requests this Court enter judgment against Defendants in whatever amount he may be found to be entitled, together with interest, costs, reasonable attorney fees, and other such relief as this Court deems just under the circumstances.

## COUNT V
### FALSE ARREST
*Against All Defendants*

81.     Plaintiff incorporates all previous allegations, paragraphs 1 through 80, as though fully set forth herein.

82.     Mr. Jones was arrested on May 22, 2014 following a search warrant execution at his residence.

83.     At the time he was arrested on May 22, 2014 by the Centerline Department of Public Safety, Defendants had conducted no meaningful investigation

of Mr. Jones, and the results of the search warrant execution were exculpatory in nature. The Defendants proceeded to effectuate the arrest, despite the lack of probable cause.

84.     Thereafter, the Oak Park Department of Public Safety caused the arrest of Mr. Jones on June 2, 2014, again having conducted no meaningful investigation of Mr. Jones. The Defendants proceeded to effectuate the arrest, despite the lack of probable cause.

85.     As a direct and foreseeable consequence of Defendants' actions, Plaintiff suffered humiliation, mortification, imprisonment, overwhelming stress, embarrassment, sleeplessness and anxiety, economic damages, loss of reputation and severe emotional harm.

WHEREFORE, Plaintiff requests this Court enter judgment against Defendants in whatever amount he may be found to be entitled, together with interest, costs, reasonable attorney fees, and other such relief as this Court deems just under the circumstances.

## COUNT VI
## MALICIOUS PROSECUTION
*Against All Defendants*

86.     Plaintiff incorporates all previous allegations, paragraphs 1 through 85, as though fully set forth herein.

87. As alleged above, the Defendants conducted no meaningful investigation regarding Mr. Jones. Nevertheless, Defendants arrested and perpetuated the prosecution against Mr. Jones for several bank robberies.

88. The Defendants continued to press for the prosecution of Mr. Jones even in the face of exculpatory evidence.

89. All criminal charges against Mr. Jones were eventually dismissed.

90. As a direct and foreseeable consequence of Defendants' actions, Plaintiff suffered humiliation, mortification, imprisonment, overwhelming stress, embarrassment, sleeplessness and anxiety, economic damages, loss of reputation and severe emotional harm.

WHEREFORE, Plaintiff requests this Court enter judgment against Defendants in whatever amount he may be found to be entitled, together with interest, costs, reasonable attorney fees, and other such relief as this Court deems just under the circumstances.

## COUNT VII
## FALSE IMPRISONMENT
*Against All Defendants*

91. Plaintiff repeats and re-alleges all previous paragraphs 1 -90, as though fully set forth herein.

92.     The Defendants, either individually, or in their official capacity, deprived Plaintiff of his personal liberty and freedom.

93.     The imprisonment and restraint was against Plaintiff's will.

94.     The imprisonment and restraint was by actual physical force, detention in secured facilities, and finally, by restricting Mr. Jones' freedom of movement by means of a tether unit.

95.     The deprivation of Mr. Jones' liberty and freedom was intentional, unlawful, unprivileged and without probable cause.

96.     In addition to the unreasonableness of the initial restraint and deprivation of personal liberty and freedom of movement at the time of his arrest, the continued detentions and restrictions placed upon Plaintiff, as a result of the Defendant's actions, were unreasonable.

97.     As a direct and foreseeable consequence of Defendants' actions, Plaintiff suffered humiliation, mortification, imprisonment, overwhelming stress, embarrassment, sleeplessness and anxiety, economic damages, loss of reputation and severe emotional injury.

WHEREFORE, Plaintiff requests this Court enter judgment against Defendants in whatever amount he may be found to be entitled, together with interest, costs, reasonable attorney fees, and other such relief as this Court deems just under the circumstances.

## RELIEF REQUESTED

For all the foregoing reasons, the Plaintiff, GLYNN JONES, JR., demands that this Court enter judgment against Defendants in whatever amount he may be found to be entitled, together with interest, costs, reasonable attorney fees, and other such relief as this Court deems just under the circumstances.

Respectfully submitted,

FLOOD LAW PLLC

/s/Todd F. Flood
Todd F. Flood (P58555)
Lawrence B. Shulman (P45075)
Attorneys for Plaintiff
401 N Main St
Royal Oak, MI 48067
(248) 547-1032
tflood@floodlaw.com

## JURY DEMAND

Plaintiff demands a trial by jury.

Respectfully submitted,

FLOOD LAW PLLC

 /s/Todd F. Flood
Todd F. Flood (P58555)
Lawrence B. Shulman (P45075
Attorneys for Plaintiff
401 N Main St
Royal Oak, MI 48067
(248) 547-1032
tflood@floodlaw.com