UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

GLYNN JONES, JR.,

Plaintiff,

v.

CITY OF OAK PARK, ET AL.,

Defendants.

_____/

Case No. 15-cv-12968

UNITED STATES DISTRICT COURT
JUDGE
GERSHWIN A. DRAIN

UNITED STATES MAGISTRATE JUDGE
ANTHONY P. PATTI

## OPINION AND ORDER GRANTING CENTER LINE DEFENDANTS' MOTION FOR SUMMARY JUDGMENT [33]

Plaintiff commenced suit against the Defendants alleging mistreatment throughout his arrest and prosecution in 2014. In 2014 Plaintiff was mistakenly regarded as a suspect in a series of bank robberies within the cities of Center Line and Oak Park. Pending before the Court is Center Line's Motion for Summary Judgment. For the reasons that follow, the Court will GRANT Center Line's Motion [34].

## II. BACKGROUND

On May 19, 2014, the PNC Bank in Center Line was robbed. Center Line Officer Curt Winn investigated the robbery. Two employees, Kiana Anderson and Prena Kalaj witnessed the robbery. Ms. Anderson was the bank teller. Ms. Anderson described an African-American male, approximately 6'4" tall and 200 pounds who

approached her. The man gave her a note, which indicated he had a gun. The man later told her to hurry up and give her money. According to Ms. Anderson, she gave the robber the money. The robber then backed away and walked fast out of the bank.

In the middle of the encounter, Ms. Kalaj walked behind Ms. Anderson to get to her desk. Ms. Kalaj heard the robber say "Hurry the fuck up" and looked at him. Ms. Kalaj proceeded to press the panic button. Other employees who were present generally confirmed Ms. Kalaj and Ms. Anderson's recollection of the events.

The robbery was captured on surveillance. A still photograph of the suspect was taken from the surveillance video and circulated to the news. Fingerprints were taken from the bank, along with the note that the suspect gave the teller.

On May 20, 2014 an anonymous caller spoke to Sgt. Grace at Center Line Police Department and identified the suspect as Glynn Jones Jr. Later that day, another anonymous caller identified the suspect as Glynn Jones Jr. Winn searched Jones' name and obtained a prior photo of him. Using the picture of Jones, Winn created a photo array, including the photographs of five other men. Winn took the photo array to PNC Bank, the location of the robbery. Ms. Anderson was unable to identify the suspect. Ms. Kalaj, however, identified Jones as the robber.

Winn then learned that similar robberies occurred in nearby cities Lathrup Village, Berkley, and Oak Park. Winn met with officers from those jurisdictions and also the FBI.

On May 21, 2014 the Michigan Forensic Lab completed its report on the evidence Winn submitted. The lab compared the latent prints to Jones' finger and palm impressions "with no identifications made." Winn presented his case to the city prosecutor.

On May 22, 2014, Winn obtained a search warrant for Jones' home and an arrest warrant for Jones. That same day, the search warrant was executed at Jones' residence. No evidence of the robberies was found, but Jones was arrested. After interrogation, Jones was taken to the Macomb County Jail. On May 23, 2014, Jones was arraigned on charges of armed robbery. He posted bond and was released that same day.

On May 28, 2014, the same PNC Bank was robbed for a second time. Immediately thereafter, Center Line requested the Sterling Heights Police Department to observe Jones' apartment. The Sterling Heights Police observed both of Jones' vehicles present at the apartment. During this time Winn began to doubt whether Jones was the bank robber.

On May 30, 2014, PNC offered a $5,000 reward for the arrest and conviction of the robber. On June 4, 2014, the FBI also offered a $5,000 reward for information leading to the arrest and conviction of the bank robber. On July 2, 2014, Center Line dropped the charges against Jones.

### III. Legal Standard

Federal Rule of Civil Procedure 56(c) "directs that summary judgment shall be granted if 'there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.' " *Cehrs v. Ne. Ohio Alzheimer's Research Ctr.*, 155 F.3d 775, 779 (6th Cir. 1998). The court must view the facts, and draw reasonable inferences from those facts, in the light most favorable to the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). No genuine dispute of material fact exists where the record "taken as a whole could not lead a rational trier of fact to find for the non-moving party." *Matsushita Elec. Indus., Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). Ultimately, the court evaluates "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson*, 477 U.S. at 251–52.

### IV. Discussion

The Complaint asserts two federal claims and five state-law claims.

#### Federal Claims

<u>Count I</u>: 42 U.S.C. § 1983 Violations of the Fourth and Fourteenth Amendment against the City of Center Line
<u>Count II</u>: 42 U.S.C. § 1983 Violations of the Fourth and Fourteenth Amendment against Individual Defendants in their Individual Capacities

#### State Claims

<u>Count III</u>: Deprivation of Rights Pursuant to the Michigan Constitution

Count IV: Defamation
Count V: False Arrest
Count VI: Malicious Prosecution
Count VII: False Imprisonment against all defendants

The Court will discuss the federal claims first.

## A. Section 1983 Claims Against Individual Defendants

Section 1983 establishes "a cause of action for deprivation under color of state law, of any rights, privileges or immunities secured by the Constitution or laws of the United States." *Horn v. Madison Cty. Fiscal Court,* 22 F.3d 653, 656 (6th Cir. 1994). To prevail on this claim, a plaintiff must demonstrate "(1) the deprivation of a right secured by the Constitution or laws of the United States (2) caused by a person acting under the color of state law." *Dominguez v. Corr. Med. Servs.,* 555 F.3d 543, 549 (6th Cir. 2009) (quoting *Sigley v. City of Parma Heights,* 437 F.3d 527, 533 (6th Cir. 2006)). However, "[u]nder the doctrine of qualified immunity, 'government officials performing discretionary functions generally are shielded from liability from civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights which a reasonable person would have known.' " *Id.* (citations omitted). Thus, qualified immunity in any given case is determined by a two-part inquiry: "First, viewing the facts in the light most favorable to the plaintiff, has the plaintiff shown that a constitutional violation has occurred? Second, was the right clearly established at the time of the violation?" *Id.* (citations omitted). *Jones v. Muskegon Cty.*, 625 F.3d 935, 940–41 (6th Cir. 2010).

Plaintiff alleges Fourth and Fourteenth Amendment violations against two individual Center Line Defendants: Paul Myszenski and Curt Winn.

### 1. Paul Myszenski is Entitled to Summary Judgment

The City of Center Line argues that Paul Myszenski is entitled to summary judgment because "[t]here are no facts and there is no evidence that Defendant Myszenski had any involvement in the investigation or arrest of Glynn Jones, Jr." Dkt. No. 33, p. 31 (Pg. ID 233). The Court agrees.

The Complaint only mentions Defendant Myszenski three times. The Complaint states:

> Defendant Paul Myszenski is the Public Safety Director of Defendant City of Centerline and at all times mentioned in this complaint was acting under the color of law and color of his authority as the Public Safety Director of Centerline, Michigan…Myszenksi [was] responsible for the acts of the public safety officers of [his] respective departments while engaged in the performance of their duties as public safety officers, and [was] responsible for the proper supervision of their officers… Myszenksi [was] also responsible for the ongoing training of [his] respective public safety officers to ensure that those officers were competent to carry out their assigned duties.

Dkt. No. 1, p. 4 (Pg. ID 4). There is no allegation in the Complaint that Defendant Myszenski personally detained, arrested, prosecuted or imprisoned the Plaintiff. Furthermore, Plaintiff's brief fails to specifically mention Defendant Myszenski, except in the case's caption. It seems that the Plaintiff sought to proceed against Defendant Myszenski pursuant to a theory of vicarious liability. However, such a theory fails as a matter of law. *See Ashcroft v. Iqbal*, 556 U.S. 662, 676, 129 S. Ct.

1937, 1948, 173 L. Ed. 2d 868 (2009) ("Because vicarious liability is inapplicable to *Bivens* and § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution."). Therefore, because there is no genuine issue of fact that Defendant Myszenski violated the Constitution through his own individual actions, he is entitled to summary judgment on Plaintiff's Section 1983 claim.

### 2. Curt Winn is Entitled to Qualified Immunity

Center Line argues that Curt Winn is entitled to summary judgment because he is entitled to qualified immunity for his actions related to Jones. Dkt. No. 33, p. 17 (Pg. ID 221). Plaintiff disagrees and argues that "Detective Winn is not entitled to qualified immunity due to: (a) the unreliable photo identification; and (b) his reckless disregard for the truth." Dkt. No. 39, p. 18 (Pg. ID 616).

"Section 1983 claims are limited by the qualified immunity exception, such that a government employee will be shielded from liability so long as the employee acted under the objectively reasonable belief that his or her actions were lawful. A successful § 1983 claimant must establish that the defendant acted knowingly or intentionally to violate his or her constitutional rights, such that mere negligence or recklessness is insufficient." *Ahlers v. Schebil*, 188 F.3d 365, 373 (6th Cir. 1999) (internal citations omitted). Accordingly, to successfully remove the cloak of

qualified immunity from Winn, the Plaintiff must establish that Winn's investigation fell below an objective standard of reasonableness. *Id.*

### a. Unreliable Photo Identification

Plaintiff argues that Winn acted unreasonably because: (i) the photo array was unduly suggestive; and (ii) "the identification was made by a teller who had only seen the suspect once." Dkt. No. 39, p. 19 (Pg. ID 617).

### i. Unduly Suggestive

"In determining whether an identification is admissible, this court follows a two part analysis. The court first considers whether the procedure was unduly suggestive." *Cornwell v. Bradshaw*, 559 F.3d 398, 413 (6th Cir. 2009) (citing *Wilson v. Mitchell*, 250 F.3d 388, 397 (6th Cir. 2001); *Ledbetter v. Edwards*, 35 F.3d 1062, 1070–71 (6th Cir. 1994)). "The court must decide if the procedure itself steered the witness to one suspect or another, independent of the witness's honest recollection." *Id.* (citing *Wilson*, 250 F.3d at 397). "If the procedure was suggestive, the court then determines whether, under the totality of the circumstances, the identification was nonetheless reliable and therefore admissible." *Id.*

The Plaintiff argues that Winn's photo array was unduly suggestive because: (1) the five other men "do not resemble each other in the slightest way;" (2) Jones is the only man in a suit and tie; and (3) Jones' picture is brighter than the other five images displayed. Dkt. No. 39, p. 10, n.1 (Pg. ID 608). Neither argument has merit.

Center Line's photo array includes Jones' photograph along with the photos of five other men. Dkt. No. 39-5, p. 2 (Pg. ID 684). All of the men appear to be Black or African-American and have a brown to dark brown complexion. *Id*. Each man has a groomed mustache and/or goatee, and a straight-faced expression. *Id*. Five of the six men have closely-cropped haircuts; one man appears to be bald. *Id*. None of the photos depict height marks, but the men seem to all have similar builds. *Id*. The men appear to be about thirty to forty years-old. *Id*. Based on the immediately observable similarity of the six men, Plaintiff's argument that the five other men "do not resemble each other in the slightest way" is simply untrue.

It is true that Jones is the only man in a jacket and tie. *Id*. However, that detail does not render the photo array unduly suggestive. *See United States v. Tyler*, 714 F.2d 664, 667–68 (6th Cir. 1983) (holding that a photo of a defendant containing mug shot markers was not unduly suggestive where the other pictures did not contain mug shot markers); *United States v. Perry*, 991 F.2d 304, 311 (6th Cir. 1993) (holding that an array picturing a defendant without mug shot markers was not unduly suggestive even though all other defendants' pictures did have mug shot markers). Considering that all of the other men are at least wearing collared shirts, the minor difference of Jones' tie and jacket is considerably less suggestive than the mug-shot markers mentioned in *Tyler* and *Perry*.

It also may be true that Jones' picture is brighter than the other pictures.[1] Nevertheless, a mere difference in pictures alone is not sufficient to render a photo array unduly suggestive. Rather the procedure must steer the witness to one suspect, independent of the witness's recollection. *See Wilson v. Mitchell*, 250 F.3d 388, 397 (6th Cir. 2001). Here, there is no evidence that the difference in brightness steered the witness to select Mr. Jones' picture over all the others.

Plaintiff's arguments that the photo array was unduly suggestive fail as a matter of fact or a matter of law.

### ii. Teller Only Saw Suspect Once

Next the Plaintiff seems to argue that the eyewitness identification made by the teller was unreliable because she only saw the suspect once. The Plaintiff attempts to distinguish *Alhers* and *United States v. Lanier*, 636 F.3d 228 (6th Cir. 2011)—both of which hold that an officer is entitled to rely on eyewitness identification to establish probable cause—on the basis that those cases involved a victim that knew the suspect and saw the suspect several times before. Dkt. No. 39, p. 19 (Pg. ID 617). This argument is baseless. There is no language in either opinion narrowing the holding to only cases in which a victim saw the suspect more than once. Moreover, as best as the Court can tell, no court has adopted such a limited

---

[1] The Plaintiff provided the Court with a copy of the photo lineup. However, the brightness of the pictures is not entirely clear.

interpretation of either case. Without any legal support for Plaintiff's interpretation, his argument fails. Plaintiff fails to demonstrate that Winn's conduct during the eyewitness identification fell below an objective standard of reasonableness.

### b. Reckless Disregard for the Truth

Next, Plaintiff argues that Winn is not entitled to qualified immunity because he stated deliberate falsehoods and acted with a reckless disregard for the truth when requesting a warrant.

"An arrest warrant is valid only if supported by probable cause." *Ahlers*, 188 F.3d at 370. "Once probable cause is established, an officer is under no duty to investigate further or to look for additional evidence which may exculpate the accused." *Id*. at 371. "This, however, does not mean that officers may make hasty, unsubstantiated arrests with impunity." *Id.* "[O]fficers, in the **process of determining whether probable cause exists**, cannot simply turn a blind eye toward potentially exculpatory evidence known to them in an effort to pin a crime on someone." *Id*. at 372 (emphasis in original).

Plaintiff argues that Winn erred when he: (1) ignored the height descriptions; (2) misrepresented the height descriptions to the prosecutor; (3) failed to include the height descriptions for robberies in other cities; (4) misrepresented the fingerprint results; and (5) arrested Jones after the execution of the search warrant even though

he started to have some questions about Jones as a suspect. Plaintiff's arguments fail. None of Winn's alleged wrongs amount to a constitutional violation.

### 1. Ignored Height Descriptions

Plaintiff argues that Winn recklessly disregarded the truth because the warrant affidavit fails to mention the difference in height between Jones and the witnesses' descriptions. This argument fails as a matter of law.

Eyewitnesses from the Center Line robberies described the suspect as 6'2" to 6'4" tall. Dkt. No. 39-3, pp. 13, 17–18 (Pg. ID 657, 661–62). Reports from Lathrup Village, Berkley, and Oak Park describe the suspect as 6'0" to 6'3" tall. Dkt. No. 39-2. Plaintiff is about 5'10" tall. At most the Plaintiff is three inches shorter than the height range described by Center Line eyewitnesses and two inches shorter than the height range described by witnesses from other cities.

Precedent within this circuit demonstrates that such a height discrepancy is insufficient to undermine probable cause for an arrest. *See Bach v. Drerup*, 545 F. App'x 474, 475–77 (6th Cir. 2013) (holding that although a witness described the suspect as between 5'3" to 5'5" tall and police described the suspect as 5'7" to 6'0" tall—"the height difference was not so extreme to make [the witness's] statement unworthy of belief."); *cf. Howard v. Bouchard*, 405 F.3d 459, 471 (6th Cir. 2005) (holding that a three-inch difference in an in-person lineup was not unduly suggestive).

Furthermore, Plaintiff's argument that the height discrepancies would have undermined probable cause is illogical. Probable cause for the Plaintiff's arrest turned on the two anonymous tips and the eyewitness identification by Prena Kalaj. The surveillance photos, which Center Line Police released to the media, did not include a height. Dkt. No. 34-4, pp. 20–22 (Pg. ID 436). The photo array also did not include a height of the suspect. Therefore, probable cause to arrest and search the Plaintiff depended on his facial features, not his height.

### 2. Misrepresentations to the Prosecutor

Plaintiff notes that Center Line's police report lists the suspect's height as anywhere from 6'4" to 5'10" tall. According to the Plaintiff "[g]iven the fact that a description of 5'10" is not given by any of the witness [sic], not included in the report, and written so that the taller height precedes the shorter height, there is a strong possibility that Officer Grace manually added the height of 5'10" into the description box only after they obtained Jones' driver's license and saw that Jones was 5'10"." Dkt. No. 39, pp. 9–10 (Pg. ID 607–08).

This argument fails for three reasons. First, Plaintiff's theory is creative, but proceeds on speculation, rather than evidence. *See Lewis v. Philip Morris Inc.*, 355 F.3d 515, 533 (6th Cir. 2004) ("In order to survive a motion for summary judgment, the non-moving party must be able to show sufficient probative evidence that would permit a finding in his favor on more than mere speculation, conjecture, or fantasy.")

(internal quotations and annotations omitted). Second, Plaintiff's theory alleges wrongdoing against Officer Grace, who is not a party to this litigation. *See Iqbal*, 556 U.S. at 676) (holding that a plaintiff must plead that "each Government-official defendant, through the official's own individual actions, has violated the Constitution."). Third, as stated previously, probable cause did not turn on the Plaintiff's height, nor does the height discrepancy defeat probable cause. *See Bach v. Drerup*, 545 F. App'x 474, 475–77 (6th Cir. 2013).

### 3. Failure to Include Height Descriptions for Robberies in Other Cities

Plaintiff argues that Winn recklessly disregarded the truth because he did not include the police reports and witness statements from the other three cities. Dkt. No. 39, p. 23 (Pg. ID 621). This argument fails.

Plaintiff seems to imply that affidavits must include every detail known to the officer. This is contrary to the law. "Affidavits do not have to be perfect, nor do they have to provide every specific piece of information to be upheld." *Hale v. Kart*, 396 F.3d 721, 725 (6th Cir. 2005). "Affidavits are not required to use magic words, nor does what is obvious in context need to be spelled out." *United States v. Allen*, 211 F.3d 970, 975 (6th Cir. 2000). Instead, courts must look at warrants and the affidavits supporting the warrants, using a totality of the circumstances test. *Illinois v. Gates et ux.,* 462 U.S. 213, 230–31, 103 S. Ct. 2317, 76 L.Ed.2d 527 (1983). "The totality of the circumstances test requires us to evaluate the probabilities of finding criminal

activities based on the evidence provided in the affidavit, as opposed to requiring that the evidence in the affidavit guarantees the discovery of criminal activity." *Hale*, 396 F.3d at 725.

In this case Winn was under no obligation to include police reports from three cities outside of his jurisdiction. Therefore, Plaintiff's argument that Winn recklessly disregarded the truth by not including the other police reports, is unsupported. Furthermore, although the other police reports describe the suspect as over six feet tall, including those police reports would skew the suspect's height range *closer* to Jones' actual height. Therefore, the added police reports would have made Jones' height difference less significant.

### 4. Misrepresented Fingerprints

Plaintiff argues that the arrest and search warrant affidavit fails to mention that Jones' fingerprints did not match the fingerprints left at the May 19th robbery. Dkt. No. 39, p. 25 (Pg. ID 623). Winn's deposition states that there was a latent fingerprint lifted from a door at a Center Line Bank. Dkt. No. 40-7, p. 6 (Pg. ID 860). Winn states that after he submitted the fingerprint from the door for analysis, the lab "called back and said it was of no value." *Id.*, p. 11 (Pg. ID 865). Winn relayed that information to the prosecutor, who nevertheless proceeded with the warrant. *Id.* According to the Plaintiff, Winn's statement is a lie because "Winn told the prosecutor that the latent prints taken from the scene were of no value, when in fact,

they were compared with Jones' fingerprints with no identification being made." Dkt. No. 39, p. 26 (Pg. ID 624).

The Court finds that there is no material dispute of fact and Winn made no misrepresentation. Rather, the Plaintiff misinterprets the evidence. The error in the Plaintiff's argument is that he conflates a latent fingerprint with a latent lift. "A latent fingerprint is left by a person touching an object with the body fluids adhering to the surface and is usually invisible." *Cone v. Colson*, 925 F. Supp. 2d 927, 976 (W.D. Tenn. 2013). On the other hand, a latent lift is obtained by dusting a latent fingerprint and lifting the now-visible impression. *See* 36 Am. Jur. Proof of Facts 2d 285 (Originally published in 1983) ("A latent impression left on a hard, smooth surface, such as glass, wood, metal, plastic, or china, may be brought out by applying a fine powder of a color that contrasts with the color of the surface. The powder is dusted across the surface, and the excess is blown off, leaving what is held by the moisture, or it may be sprayed on from an aerosol spray can. The now-visible impression can be photographed or removed ("lifted") by use of transparent tape that is then affixed to a card.").

According to the report, Winn submitted 17 latent lifts and one white piece of paper to the Michigan Forensic Lab. Dkt. No. 39-10, p. 2 (Pg. ID 723). The report states that "the listed evidence was processed with *latent finger prints* of comparison value being developed on the white piece of paper." *Id*. (emphasis added). The latent

prints (on the white piece of paper) "were compared with the known impressions received [from Jones] with no identifications being made." *Id*. However, with respect to the latent lifts, the report says only, "latent lifts were examined with latent finger prints and palm prints of comparison value being observed." *Id*. Therefore, Winn's statement that the latent lift was of no value is not inconsistent with the lab report because only the latent fingerprint from the white paper had comparison value. Plaintiff's argument that Winn misrepresented the fingerprints is factually inaccurate.

### 5. Arresting Jones After Winn Doubted Jones as the Suspect

On May 28, 2014, the PNC Bank in Center Line was robbed for a second time. Winn requested officers from Sterling Heights to drive past Jones' apartment. The Sterling Heights officers observed both of Jones' vehicles present at his home. At that time Winn "started to have some questions as to Mr. Jones as a suspect." Dkt. No. 40-7, p. 16 (Pg. ID 870). Plaintiff argues that Winn acted with a reckless disregard for the truth because he continued with Jones' charges despite his doubts. This argument fails.

"Once probable cause is established, an officer is under no duty to investigate further or to look for additional evidence which may exculpate the accused." *Ahlers*, 188 F.3d at 371. Law enforcement "is under no obligation to give any credence to a suspect's story [or alibi] nor should a plausible explanation in any sense require the

officer to forego arrest pending further investigation if the facts as initially discovered provide probable cause." *Id.* (quoting *Criss v. City of Kent*, 867 F.2d 259, 263 (6th Cir. 1988). In this case, the facts as initially discovered, i.e., the eyewitness identification and the two anonymous tips, provided Defendants with ample probable cause.

This is not the case where Winn recklessly disregarded the truth by conducting an incompetent or incomplete investigation. Accordingly, Winn is entitled to qualified immunity.

## B. Malicious Prosecution

Plaintiff alleges that the Center Line officers maliciously prosecuted him without probable cause. Dkt. No. 39, p. 25 (Pg. ID 623). Although the Plaintiff brings this claim against both Center Line officers, Plaintiff only makes allegations and arguments with respect to Winn.

"The Sixth Circuit 'recognize[s] a separate constitutionally cognizable claim of malicious prosecution under the Fourth Amendment,' which 'encompasses wrongful investigation, prosecution, conviction, and incarceration.' " *Sykes v. Anderson*, 625 F.3d 294, 308–09 (6th Cir. 2010) (citing *Barnes v. Wright*, 449 F.3d 709, 715–16 (6th Cir. 2006) (internal quotation marks omitted)).

A plaintiff must establish the following to prevail on a claim of malicious prosecution under § 1983, where the claim is based on a violation of the Fourth Amendment:

> First, the plaintiff must show that a criminal prosecution was initiated against the plaintiff and that the defendant made, influenced, or participated in the decision to prosecute. Second, because a § 1983 claim is premised on the violation of a constitutional right, the plaintiff must show that there was a lack of probable cause for the criminal prosecution. Third, the plaintiff must show that, as a consequence of a legal proceeding, the plaintiff suffered a deprivation of liberty, as understood in our Fourth Amendment jurisprudence, apart from the initial seizure. Fourth, the criminal proceeding must have been resolved in the plaintiff's favor.

*Id.* (internal citations and quotations omitted).

Here, Jones relies on his previous arguments—that Winn misrepresented facts, recklessly disregarded the truth, and conducted an unreliable photo array—to argue that Winn lacked probable cause to prosecute Jones. Dkt. No. 39, pp. 26–27 (Pg. ID 624–25). The Court previously found those arguments against Winn failed as a matter of law. *See Hale v. Kart*, 396 F.3d 721, 728 (6th Cir. 2005) ("When no material dispute of fact exists, probable cause determinations are legal determinations that should be made by a court."). Therefore, as Plaintiff fails to demonstrate a lack of probable cause, Jones' malicious prosecution claim fails. Dkt. No. 40, p. 29 (Pg. ID 812). Winn is entitled to summary judgment on Plaintiff's malicious prosecution claim.

### C. Section 1983 Claims Against the City of Center Line

Count I of the Complaint alleges that the City of Center Line is liable under 42 U.S.C. § 1983 for failing to train and supervise its officers so as to prevent the individual officers' alleged wrongful conduct. Dkt. No. 1, pp. 16–17 (Pg. ID 16–17).

"A plaintiff can bring a claim under section 1983 when she is deprived 'of any rights, privileges, or immunities secured by the Constitution and laws,' as a result 'of any statute, ordinance, regulation, custom, or usage, of any State.' " *Doe v. Claiborne Cty., Tenn. By & Through Claiborne Cty. Bd. of Educ.*, 103 F.3d 495, 505 (6th Cir. 1996) (quoting 42 U.S.C. § 1983). A municipal liability claim must be examined by applying the following two-pronged inquiry: (1) Has the Plaintiff asserted a deprivation of a constitutional right; and (2) is the municipality responsible for that violation. *Id.* "For liability to attach, both questions must be answered in the affirmative." *Id.*

In this case, the Plaintiff failed to demonstrate that the City of Center Line through Myszenski and Winn deprived the Plaintiff of a constitutional right. Therefore, Plaintiff's municipal claim fails. The City of Center Line is entitled to summary judgment.

**D. State Law Claims**

The Complaint alleges four[2] state law claims against the Defendants: (1) deprivation of rights under the Michigan Constitution; (2) malicious prosecution; (3) false arrest; and (4) false imprisonment.

### 1. Violation of the Michigan Constitution

Plaintiff's deprivation of rights claim under the Michigan Constitution fails as a matter of law. The Michigan Supreme Court in *Jones v. Powell*, 462 Mich. 329, 612 N.W.2d 423, 426–27 (2000), confirmed that damages against the state for violations of the Michigan Constitution are generally unavailable. With regard to actions against state officers pursuant to violations of the Michigan Constitution, the Michigan Supreme Court stated the following:

> We agree with the Court of Appeals majority that our decision in *Smith* provides no support for inferring a damage remedy for a violation of the Michigan Constitution in an action against a municipality or an individual government employee….*Smith* only recognized a narrow remedy against the state on the basis of the unavailability of any other remedy. Those concerns are inapplicable in actions against a municipality or an individual defendant. Unlike states and state officials sued in an official capacity, municipalities are not protected by the Eleventh Amendment. A plaintiff may sue a municipality in federal or state court under 42 U.S.C. § 1983 to redress a violation of a federal constitutional right. Further, a plaintiff may bring an action against an individual defendant under § 1983 and common-law tort theories.

---

[2] The original Complaint asserted five state law claims. However, on February 16, 2016, Plaintiff voluntarily dismissed Count IV alleging defamation. *See* Dkt. No. 18.

*Id.* at 427 (internal citations and quotations omitted). Here, because Plaintiff has other remedies available to secure damages, he has no actionable claim for a violation under the Michigan Constitution. This claim fails. Plaintiff does not even mention this claim in his brief.

### 2. Malicious Prosecution Pursuant to Michigan Law

Pursuant to Michigan law, "to maintain a suit for malicious prosecution, it must be established: (1) The fact of the alleged prosecution that has come to a legal termination in plaintiff's favor; (2) that the defendant had no probable cause; (3) that he acted from malicious motives." *Turbessi v. Oliver Iron Mining Co.*, 250 Mich. 110, 112, 229 N.W. 454, 454–55 (1930). Like the Plaintiff's malicious prosecution claim pursuant to the Fourth Amendment, the Plaintiff's malicious prosecution claim pursuant to state law fails because as a matter of law, the Court finds that there was probable cause to prosecute the Plaintiff.

### 3. False Arrest and False Imprisonment

"To prevail on a claim of false arrest or false imprisonment, a plaintiff must show that the arrest was not legal, i.e., the arrest was not based on probable cause." *Peterson Novelties, Inc. v. City of Berkley*, 259 Mich. App. 1, 18, 672 N.W.2d 351, 362 (2003). Again, in this case, there was probable cause for the arrest. Accordingly, Plaintiff's false arrest and false imprisonment claims fail as a matter of state law.

## V. CONCLUSION

It is not lost on the Court that Mr. Jones was searched, arrested, jailed, and forced to post bond for a crime he did not commit. However, based on the law and the evidence before the Court, Center Line Defendants' Motion for Summary Judgment [33] is GRANTED.

IT IS SO ORDERED.

Dated:        August 30, 2017

/s/Gershwin A. Drain
HON. GERSHWIN A. DRAIN
United States District Court Judge