UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

GLYNN JONES, JR.,

Plaintiff,

v.

CITY OF OAK PARK, ET AL.,

Defendants.

_____/

Case No. 15-cv-12968

UNITED STATES DISTRICT COURT
JUDGE
GERSHWIN A. DRAIN

UNITED STATES MAGISTRATE JUDGE
ANTHONY P. PATTI

**OPINION AND ORDER GRANTING OAK PARK DEFENDANTS' MOTION FOR
SUMMARY JUDGMENT [34]**

## I. INTRODUCTION

Plaintiff commenced suit against the Defendants alleging mistreatment throughout his arrest and prosecution in 2014. In 2014 Plaintiff was mistakenly regarded as a suspect in a series of bank robberies within the cities of Center Line and Oak Park. Pending before the Court is Oak Park's Motion for Summary Judgment. For the reasons that follow, the Court will GRANT Oak Park's Motion [34].

## II. BACKGROUND

On May 6, 2016, a Comerica Bank located at 25192 Greenfield Road in Oak Park, Michigan was robbed. Dkt. No. 1, p. 6 (Pg. ID 6). Oak Park Officer Rachel Ginopolis investigated the robbery and conducted preliminary interviews. Dkt. No.

34-2, p. 2 (Pg. ID 385). Statements were taken from both Krystal Jackson, the teller who was held up, and another bank employee named Courtnie Pierce. *Id*., pp. 5–6 (Pg. ID 388–89). According to Ginopolis' report, Ms. Jackson described the suspect as a thin, black male, who stood around 6'1" and had a dark complexion. *Id*. Ms. Jackson further indicated that the robber stated, "I need you to do this for me. I have a gun and will shoot that lady," while nodding his head toward a female customer. *Id*. In addition, the perpetrator passed Ms. Jackson a folded note which suggested that he was armed. *Id*. The other bank employee, Ms. Pierce, described the suspect as a 6'3" black male with a slender build and a scruffy beard. *Id*. Officer Ginopolis then viewed surveillance footage of the suspect and attached photographs from that footage to her report. *Id*., pp. 8–17 (Pg. ID 391–400).

The same Comerica Bank was robbed again on May 12, 2014. Dkt. No. 1, p. 6 (Pg. ID 6). Oak Park Officer Erik Sanders responded to the call and conducted his own interviews. Dkt. No. 34-4, pp. 6–7 (Pg. ID 422–23). The bank teller, Shantell Woods, described a similar scenario in which the suspect passed a note under the window and then threatened to shoot a bystander if she did not hurry. *Id*. Ms. Woods and other witnesses informed Officer Sanders that they believed the suspect to be the same individual who had robbed the branch on May 6, 2014. *Id*. Again, witnesses described the suspect as a thin, black male in his late 30's to early 40's, between 6'0" to 6'3" tall, with a dark complexion and a thin mustache. *Id*.

Defendant Detective Brian Barker took over as the investigative officer in charge of the case. *Id*. at p. 7–10 (Pg. ID 423–26). During his investigation, Detective Barker became aware of a similar robbery that took place on May 19, 2014 at a PNC Bank in Center Line, Michigan. *Id*. at p. 8 (Pg. ID 424). The Center Line Police Department obtained pictures of the suspect from the surveillance footage and released these photos to the media, seeking information from the public in identifying the suspect. *Id*.

On May 20, 2014, Detective Barker spoke with Center Line Detective Curt Winn. *Id*. Winn informed Detective Barker that the Center Line Police Department received two anonymous tips identifying Plaintiff as the bank robbery suspect. *Id*. The informants both stated that they worked with Plaintiff at Ford Motor Company. *Id*. One informant mentioned that Plaintiff had recently been absent from work due to medical issues. *Id*. Detective Barker then obtained pictures of Plaintiff from various databases and compared those pictures to the surveillance photographs obtained from the Center Line robbery and the May 12, 2014 Oak Park robbery. *Id*. To Detective Barker, the photographs appeared to depict the same person. *Id*.

Detective Barker met with Detective Winn and representatives from the FBI and Lathrup Village on May 21, 2014. *Id*. The Detectives decided to prepare a photo line-up including Plaintiff's picture and ask the respective bank tellers if they could identify the suspect. *Id*. That same day, both Comerica Bank tellers (Krystal Jackson

and Shantelle Woods) positively identified Plaintiff as the suspect. *Id*. Detective Barker learned from Detective Winn that a Center Line PNC Bank teller also identified the Plaintiff as the suspect. *Id*. In addition, Plaintiff acknowledges in his deposition that at a glance there is a resemblance between the pictures of him and the pictures of the suspect. Dkt. No. 34-7, p. 20 (Pg. ID 510).

On May 22, 2014, Detective Barker learned from Detective Winn that the Macomb County Prosecutor had issued an arrest warrant for Plaintiff. Dkt. No. 34-4, pp. 8 (Pg. ID 424). Detective Barker, along with Oak Park Public Safety Detective Robert Koch and Officer Devin Benson subsequently traveled to Plaintiff's apartment in Sterling Heights, MI. *Id*. Upon arrival, the officers learned that the Warren Special Response Team entered the residence and took Plaintiff into custody. *Id*. The Oak Park officers then assisted the Center Line officers in searching the apartment. *Id*.

Plaintiff was then transported to the Center Line Police Department, where he agreed to be interviewed without an attorney present. *Id*. at p. 9 (Pg. ID 425). According to the report, Plaintiff stated that he has been an employee at Ford Motor Company for 19 years but recently took around a month off due to a recurrence of a back injury. *Id*. Plaintiff also mentioned that he had filed for bankruptcy in 2009 and pays a significant amount of money each month in child support. *Id*.

In regard to the bank robberies, Plaintiff denied any involvement but had trouble remembering where he had been during the incidents at issue. *Id.* Also, Plaintiff agreed to take a polygraph. *Id.* On May 23, 2014, Plaintiff was arraigned in Macomb County and released on bond from the Macomb County Jail. *Id.*

In a deposition, Detective Barker testified that the variance in height between Plaintiff (5'10") and the witnesses' descriptions (6'0" to 6'4") did not negate his probable cause determination considering the positive identification by three bank tellers. Dkt. No. 40-22, p. 6 (Pg. ID 996). Detective Barker explained that it is not uncommon for witnesses or victims of violent crimes to be "off" in their physical description of perpetrators. *Id.* Plaintiff's proposed expert, William J. Cousins, likewise testified that a crime witness's or victim's physical description of a suspect can be influenced by the stress of a high-pressure situation, such as an armed robbery. Dkt. No. 33-6, p. 25 (Pg. ID 288).

On May 28, 2014, the PNC Bank branch in Center Line was robbed for a second time. Dkt. No. 34-4, p. 9 (Pg. ID 425). At the request of Center Line Detective Winn, officers from Sterling Heights drove past Plaintiff's apartment and observed both of Plaintiff's vehicles to be present. *Id.* Detective Winn informed Detective Barker of the robbery and the observation of Plaintiff's cars at his house. *Id.*

On May 30, 2014, Detective Barker presented his investigative file to the Oakland County Prosecutor, who authorized an arrest warrant for Plaintiff on four

counts of bank robbery. *Id*. On June 2, 2014, Plaintiff was arrested and subsequently incarcerated until June 6, 2014 because he was unable to afford the bondman's fees. *Id*.

On June 4, 2014, T-Mobile sent Plaintiff's phone records to the authorities. The records revealed that Plaintiff's cell phone was in the area of his residence at the time of both Oak Park robberies. *Id*. at p. 10 (Pg. ID 426). Further, on July 31, 2014, Plaintiff underwent a polygraph examination at the Oakland County Sheriff's office. *Id*. The polygraph examiner concluded that Plaintiff was being truthful when he denied connection to the Comerica Bank robberies. *Id*.

On August 5, 2014, all counts were dismissed without prejudice. *Id*. On August 20, 2015, Plaintiff filed his Complaint against the City of Oak Park; the City of Center Line; Oak Park Department Of Public Safety Director Steve Cooper; Oak Park Department Of Public Safety Officers Brian Barker, Robert Koch and Devin Benson; Center Line Department Of Public Safety Director Paul Myszenski; and Center Line Department Of Public Safety Officer Curt Winn. Dkt. No. 1. Plaintiff's seven-count Complaint alleges that Defendants violated Plaintiff's Fourth and Fourteenth Amendment rights, as well as violations of the Michigan Constitution and state law claims of defamation, false imprisonment, malicious prosecution, and false arrest. *Id*. at 16–25 (Pg. ID No. 16–25).

Presently before the Court is a motion for summary judgment on behalf of the Oak Park Defendants [34]. Having reviewed the briefs and supporting documents submitted by the parties, the Court finds oral argument unnecessary. Accordingly, pursuant to Eastern District of Michigan Local Rule 7.1(e)(2), this Court will decide the instant motion on the briefs.

### III. LEGAL STANDARD

Federal Rule of Civil Procedure 56(c) "directs that summary judgment shall be granted if 'there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.' " *Cehrs v. Ne. Ohio Alzheimer's Research Ctr.*, 155 F.3d 775, 779 (6th Cir. 1998). The court must view the facts, and draw reasonable inferences from those facts, in the light most favorable to the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). No genuine dispute of material fact exists where the record "taken as a whole could not lead a rational trier of fact to find for the non-moving party." *Matsushita Elec. Indus., Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). Ultimately, the court evaluates "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson*, 477 U.S. at 251–52.

# IV. DISCUSSION

The Complaint asserts two federal claims and five state-law claims.

## Federal Claims

Count I: 42 U.S.C. § 1983 Violations of the Fourth and Fourteenth Amendment against the City of Oak Park
Count II: 42 U.S.C. § 1983 Violations of the Fourth and Fourteenth Amendment against Individual Defendants in their Individual Capacities

## State Claims

Count III: Deprivation of Rights Pursuant to the Michigan Constitution
Count IV: Defamation
Count V: False Arrest
Count VI: Malicious Prosecution
Count VII: False Imprisonment against all defendants

The Court will discuss the federal claims first.

## A. Section 1983 Claims Against Individual Defendants

Section 1983 establishes "a cause of action for deprivation under color of state law, of any rights, privileges or immunities secured by the Constitution or laws of the United States." *Horn v. Madison Cty. Fiscal Court,* 22 F.3d 653, 656 (6th Cir. 1994). To prevail on this claim, a plaintiff must demonstrate "(1) the deprivation of a right secured by the Constitution or laws of the United States (2) caused by a person acting under the color of state law." *Dominguez v. Corr. Med. Servs.,* 555 F.3d 543, 549 (6th Cir. 2009) (quoting *Sigley v. City of Parma Heights,* 437 F.3d 527, 533 (6th Cir. 2006)). However, "[u]nder the doctrine of qualified immunity, 'government officials performing discretionary functions generally are shielded from liability

from civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights which a reasonable person would have known.' " *Id.* (citations omitted). Thus, qualified immunity in any given case is determined by a two-part inquiry: "First, viewing the facts in the light most favorable to the plaintiff, has the plaintiff shown that a constitutional violation has occurred? Second, was the right clearly established at the time of the violation?" *Id.* (citations omitted). *Jones v. Muskegon Cty.*, 625 F.3d 935, 940–41 (6th Cir. 2010).

Plaintiff alleges Fourth and Fourteenth Amendment violations against four individual Oak Park Defendants: Steve Cooper, Brian Barker, Robert Koch and Devin Benson.

### 1. Defendant Steve Cooper is Entitled to Summary Judgment

The City of Oak Park argues that Steven Cooper is entitled to summary judgment because "there exists no genuine issue of material fact that he was [] personally involved in the arrest, detention or prosecution of the Plaintiff." Dkt. No. 34, p. 2 (Pg. ID 345). The Court agrees.

The Complaint only mentions Defendant Cooper three times. The Complaint states:

> Defendant Steve Cooper is the Public Safety Director of Defendant City of Oak Park and at all times mentioned in this complaint was acting under the color of law and color of his authority as the Public Safety Director of Oak Park, Michigan…Defendant[] Cooper…[was] responsible for the acts of the public safety officers…and [was] responsible for the proper supervision of [his] officers. Defendant[]

Cooper…[was] also responsible for the ongoing training of [his] respective public safety officers to ensure that those officers were competent to carry out their assigned duties.

Dkt. No. 4 (Pg. ID 4). There is no allegation in the Complaint that Defendant Cooper personally detained, arrested, prosecuted or imprisoned the Plaintiff. Furthermore, Plaintiff's briefs fail to specifically mention Defendant Cooper, except in the case's caption. It seems that the Plaintiff sought to proceed against Defendant Cooper pursuant to a theory of vicarious liability or respondeat superior. However, such a theory fails as a matter of law. *See Ashcroft v. Iqbal*, 556 U.S. 662, 676, 129 S. Ct. 1937, 1948, 173 L. Ed. 2d 868 (2009) ("Because vicarious liability is inapplicable to *Bivens* and § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution."). Therefore, because there is no genuine issue of fact that Defendant Cooper violated the Constitution through his own individual actions, he is entitled to summary judgment.

### 2. Defendants Barker, Benson, and Koch

Turning to the remaining Oak Park Defendants, Plaintiff alleges that the individual defendants violated his Fourth Amendment rights by unlawfully searching, seizing, and prosecuting the Plaintiff. Dkt. No. 1, p. 17 (Pg. ID 17).

### a. Search

On May 22, 2014, Detectives Barker, Koch and Benson traveled to Plaintiff's apartment and assisted the Center Line officers in searching Jones' apartment. Dkt. No. 40-5, p. 8 (Pg. ID 839). This was the only search performed in this case. Plaintiff concedes that "the Oak Park officers are not liable for their participation in the execution of the search warrant on May 22, 2014." Dkt. No. 40, p. 21 (Pg. ID 804). Therefore, Oak Park Defendants are entitled to summary judgment on Plaintiff's claims related to the alleged unlawful search.

### b. Seizure

During the search of his residence, officers detained Jones, then subsequently arrested and transported him to the Center Line Police Department for interrogation. Dkt. No. 1, p. 9 (Pg. ID 9). Although Oak Park Officers Koch and Benson are each mentioned in the Complaint, there are no facts or allegations indicating that they personally participated in the Plaintiff's seizure. Instead, Plaintiff only states that Koch and Benson were present during Jones' interrogation and the execution of the search. *See* Dkt. No. 40, p. 21 (Pg. ID 804). With respect to Koch and Benson, Plaintiff's brief says only the following:

> [Jones] was interviewed for over 2 hours by Oak Park officers Barker, Koch, and Benson…Officer Benson did not know the facts of the case prior to assisting in the execution of the search warrant and interrogating Jones…Officer Koch also stated that he was not involved in the investigation, yet helped

with the search warrant and interrogation anyways. *Id*. p. 15 (Pg. ID 798).

Because Plaintiff demonstrates no genuine issue of material fact that Defendants Koch and Benson, through their own individual actions, participated in Jones' seizure, imprisonment or prosecution, Defendants Koch and Benson are entitled to summary judgment on Plaintiff's Section 1983 claim. The remainder of the Court's analysis will focus on Detective Barker.

Oak Park argues that the Plaintiff was seized pursuant to a valid arrest warrant based on probable cause. Dkt. No. 34, p. 23 (Pg. ID 366). Plaintiff argues that there was insufficient probable cause to support the arrest warrant, thus his seizure was unconstitutional. Dkt. No. 40, 21–22 (Pg. ID 804–05). According to the Plaintiff: (1) unreliable eyewitness identification and (2) exculpatory evidence negated probable cause to seize the Plaintiff. *Id*.

### i. Eyewitness Identification

According to the Plaintiff, his identification was unreliable because Oak Park Officer Barker: (a) did not give eyewitness Shantell Woods any instructions; (b) because Ms. Woods seemed uncertain following her identification; and (c) because of discrepancies in the height descriptions of the suspect. *Id*., p. 22–23 (Pg. ID 805–06).

"A law enforcement officer is entitled to rely on an eyewitness identification to establish adequate probable cause with which to sustain an arrest." *Ahlers v. Schebil*, 188 F.3d 365, 370 (6th Cir. 1999). "While the facts underlying probable cause, if in dispute, must be submitted to a jury, probable cause determinations are legal determinations." *Hale v. Kart*, 396 F.3d 721, 728 (6th Cir. 2005). Here, the facts underlying probable cause are not in dispute.

### 1. Failure to Provide Eyewitness Instructions

It is telling that the Plaintiff cites no authority for his argument that an officer's failure to instruct an eyewitness before a photo line-up renders the identification unreliable. On the contrary, "[i]n determining whether an identification is admissible, this court follows a two part analysis. The court first considers whether the procedure was unduly suggestive." *Cornwell v. Bradshaw*, 559 F.3d 398, 413 (6th Cir. 2009) (citing *Wilson v. Mitchell*, 250 F.3d 388, 397 (6th Cir. 2001); *Ledbetter v. Edwards*, 35 F.3d 1062, 1070–71 (6th Cir. 1994)). "The court must decide if the procedure itself steered the witness to one suspect or another, independent of the witness's honest recollection." *Id*. (citing *Wilson*, 250 F.3d at 397). "If the procedure was suggestive, the court then determines whether, under the totality of the circumstances, the identification was nonetheless reliable and therefore admissible." *Id*.

In this case, when asked about the photo line-up, Ms. Woods said the following:

> A. I looked at the pictures, and I picked the person that I believe [sic] to most likely resemble the robber.
> …
> Q. And, Miss Woods, when they said – I think you said that they said that they just wanted you to look at some pictures and see if you saw anybody?
> A. Uh-huh.
> Q. Did they tell you what to do?
> A. No. He just told me to take a look at it and then if I saw someone to initial.
> Q. Oh, put initial by it?
> A. Yes.
> Q. By somebody if you saw them?
> A. Yes.

Dkt. No. 40-10, p. 6 (Pg. ID 901).

It seems counterintuitive that a lack of instruction by an officer could somehow rise to the level of "unduly suggestive," as described in *Cornwell*, *supra*. Rather, it seems that an officer would have to overly instruct an eyewitness to reach that threshold. Here, Ms. Woods unequivocally states that she "picked the person that [she] believe[d] to most likely resemble the robber." *Id*. There is no statement from Ms. Woods, or any other evidence in the record, that Officer Barker steered her in any way.

Even if somehow Officer Barker's lack of instruction could be considered steering, that would not invalidate Ms. Woods' identification. Considering the circumstances, there is no genuine issue of fact that Officer Barker "steered" Ms.

Woods to select Jones' photo over the other photos in the lineup. Instead, Ms. Woods' deposition makes clear that her selection was based on her honest recollection. *Id*. Therefore, Ms. Woods' identification would nevertheless be reliable.

Without supporting law or fact, Plaintiff's argument—that Detective Barker's actions rendered Ms. Woods' identification unreliable—fails.

## 2.  Uncertainty and Inaccuracy

Ms. Woods went on to testify to the following:

> Q. Okay. Did they say anything else?
> A. No.
> Q. Did they do anything else?
> A. No, not at that point. Well, after I initialed, and I asked kind of like is that him, did I get him? Kind of just a nod.
> Q. One of them nodded?
> A. Uh-huh.

*Id*.

"An eyewitness identification will constitute sufficient probable cause unless, at the time of the arrest, there is an apparent reason for the officer to believe that the eyewitness was lying, did not accurately describe what [s]he had seen, or was in some fashion mistaken regarding [her] recollection of the confrontation. This comports with the general notion that, since eyewitnesses statements are based on firsthand observations, they are generally entitled to a presumption of reliability and veracity." *Ahlers*, 188 F.3d at 370 (internal citations and omissions omitted).

Plaintiff argues that Ms. Woods' question, "did I get him?" creates an issue of fact as to whether there was an apparent reason for Officer Barker to believe Ms. Woods was mistaken. Dkt. No. 40, p. 23 (Pg. ID 806). As Plaintiff's argument goes, because Ms. Woods was uncertain, her identification was unreliable and there was no probable cause for Jones' arrest. Plaintiff is incorrect.

Neither Ms. Woods' question, nor any other evidence produced by the Plaintiff, indicates that her identification was inaccurate. In this case, any uncertainty that can be gleaned from asking, "did I get him?" is negligible. "The plaintiff must present more than a mere scintilla of evidence in support of her position…[t]he mere possibility of a fact dispute is not enough." *See Hartsel v. Keys,* 87 F.3d 795, 799 (6th Cir. 1996) (internal citations and quotations omitted). Here, Ms. Woods' follow-up question is de minimis. At most the question reflects a desire to be corroborated. No reasonable juror could find that Ms. Woods' question rose to a level to give Detective Barker an apparent reason to believe that Ms. Woods lied, did not accurately describe what she had seen, or was mistaken regarding her recollection of the confrontation.

Even if Ms. Woods' identification was unreliable, no reasonable juror could conclude that Detective Barker lacked probable cause for Plaintiff's seizure. Ms. Woods' identification was just one component of a quite substantial case against the Plaintiff at that time.

Without Ms. Woods' identification, the case against the Plaintiff at that time was substantial enough to establish probable cause. First, both Comerica Bank tellers—Shantell Woods and Krystal Jackson—identified the Plaintiff in a photo line-up. Plaintiff focuses only on Ms. Woods and neglects to mention Ms. Jackson's positive identification. According to the police report:

> [Detective Barker] presented the line up to Krystal Jackson, who was the teller during the robbery that occurred on 05/06/2014. Jackson looked at the line up and immediately pointed out pictures 1, 2, 3, 5, and 6 stating "its [sic] none of them." Jackson then pointed at the photo of Jones, and stated "that's him." [Detective Barker] had Jackson circle, initial and date the photo of Jones. Jackson was working at the Comerica Bank in Oak Park at the time [Detective Barker] presented the line up.

Dkt. No. 40-5, p. 7 (Pg. ID 838). Plaintiff presents no evidence or argument that Ms. Jackson's eyewitness identification was unreliable. There is no reason to doubt Officer Barker's reliance on Ms. Jackson's identification. Therefore, Ms. Jackson's identification established adequate probable cause to sustain Jones' arrest. *See Ahlers*, 188 F.3d at 370 ("A law enforcement officer is entitled to rely on an eyewitness identification to establish adequate probable cause with which to sustain an arrest."). It should also be noted that Plaintiff's own expert witness, William J. Cousins, testified that he did not have any basis to challenge the propriety of the photo line up conducted by Detective Barker. And, even the Plaintiff admitted there is some resemblance between him and the robber.

Second, in addition to the eyewitness identifications, two unknown informants called and identified the Plaintiff as the robber. Not only did the informants provide his name, they provided other personal information about the Plaintiff. "[I]t is true that anonymous informants generally cannot establish probable cause alone." *Hale v. Kart*, 396 F.3d 721, 729 (6th Cir. 2005). However, the very next day, Ms. Jackson (and Ms. Woods) corroborated the anonymous tips when they separately identified the Plaintiff in the photo line-up.

Therefore, even excluding Ms. Woods' eyewitness identification, reasonable jurors could not dispute that there was nevertheless probable cause for the arrest based on Ms. Jackson's eyewitness identification and the two anonymous tips—all of which implicated the Plaintiff.

### 3. Height Discrepancies

Police reports from three different departments (Lantrup Village, Berkley, and Oak Park) describe the suspect as 6'0" to 6'3" tall. For example, Ms. Jackson described the suspect as 6'1" tall. Dkt. No. 40-5, p. 5 (Pg. ID 836). Another witness, Courtnie Pierce, described the suspect as 6'2" tall. Dkt. No. 40-6, p. 10 (Pg. ID 852). In reality, Jones is about 5'10'' tall. Plaintiff argues that the two to five-inch height discrepancy negated probable cause to arrest the Plaintiff. Plaintiff's argument fails for two reasons.

First, precedent within this circuit demonstrates that such a height discrepancy is insufficient to undermine probable cause for an arrest. *See Bach v. Drerup*, 545 F. App'x 474, 475–77 (6th Cir. 2013) (holding that although a witness described the suspect as between 5'3" to 5'5" tall and police described the suspect as 5'7" to 6'0" tall, "the height difference was not so extreme to make [the witness's] statement unworthy of belief."); *cf. Howard v. Bouchard*, 405 F.3d 459, 471 (6th Cir. 2005) (holding that a three-inch difference in an in-person lineup was not unduly suggestive).

Second, Plaintiff's argument is unpersuasive because the Plaintiff's identification did not turn on his height. Ms. Woods and Ms. Jackson identified the Plaintiff via photo lineup. The photo lineup did not include heights. Dkt. No. 40-9. The surveillance photos, which Center Line Police released to the media, also did not include a height. Dkt. No. 34-4, pp. 20–22 (Pg. ID 436). Police obtained the two anonymous tips and the two eyewitness identifications irrespective of any height descriptions. Therefore, the height discrepancies were irrelevant to establishing probable cause to seize the Plaintiff.

### ii. Intentionally Withholding Material Information

Plaintiff argues that Officer Barker: (a) intentionally withheld material information from the prosecutor and the judge; and (b) acted with a reckless

disregard for the truth when he turned a blind eye towards potential exculpatory evidence. Dkt. No. 40, pp. 23–27 (Pg. ID 806–10).

"In a civil rights case, investigators are entitled to rely on a judicially-secured arrest warrant as satisfactory evidence of probable cause." *Vakilian v. Shaw*, 335 F.3d 509, 517 (6th Cir. 2003) (citing *Yancey v. Carroll Cty.,* 876 F.2d 1238, 1243 (6th Cir. 1989)); *see also Hale*, 396 F.3d at 725 ("In § 1983 actions, an officer ordinarily receives qualified immunity if he or she relies on a judicially secured warrant."). "However, an officer or investigator cannot rely on a judicial determination of probable cause if that officer knowingly makes false statements and omissions to the judge such that but for these falsities the judge would not have issued the warrant." *Id.* (internal citations and quotations omitted). "[S]trongly material omissions could provide evidence of an intention to mislead." *Id.* at 727. However, "[t]he mere existence of omissions alone is ordinarily not enough to make this strong preliminary showing." *Id.*

Plaintiff argues that Officer Barker intentionally withheld three material pieces of information from the prosecutor and the state court judge: (a) the fact that Jones' fingerprints did not match fingerprints taken from the May 19th robbery; (b) the search warrant produced no evidence linking Jones to the robberies; and (c) immediately after the May 28th robbery, officers noticed that both of Jones' vehicles were at his apartment. These actions, according to the Plaintiff, negate probable

cause for his arrest and disqualify Barker from receiving qualified immunity. *Id*., p. 21 (Pg. ID 804). The Court disagrees.

In this case, Plaintiff produced no evidence or argument that Officer Barker intended to mislead the prosecutor or judge. Indeed, the word "mislead" or any variation of the word is absent from Plaintiff's complaint and briefs. Instead Plaintiff seems to argue that the omitted information is so "strongly material" that it alone demonstrates a triable issue of Barker's intention to mislead. *See Hale*, 396 F.3d at 727. While the Sixth Circuit has not described in great detail what type of omissions are so strongly material to satisfy the strong preliminary showing of an intention to mislead, it seems clear that Plaintiff has not met that burden.

The Court finds that the three omitted pieces of evidence, without more, do not create an inference of Detective Barker's intention to mislead. Turning first to the fingerprints, the Plaintiff fails to demonstrate that Detective Barker was even aware of the fingerprint results. The fingerprint analysis was submitted to Officer Winn from Center Line Police, not to Detective Barker or any other officer from Oak Park. Dkt. No. 40-19, p. 2 (Pg. ID 978). Detective Barker's deposition states that Oak Park did not submit any fingerprints for lab analysis and that he could not speak for the investigations in other jurisdictions. Dkt. No. 40-22, p. 6 (Pg. ID 996). Plaintiff produces no evidence to the contrary. It seems impossible that Detective Barker could intentionally omit information that he did not know.

Next, Plaintiff argues that Detective Barker withheld the fact that the search warrant produced no evidence linking Jones to the robberies. Dkt. No. 40, p. 25 (Pg. ID 808). This argument fails.

The Plaintiff produces no evidence showing that Detective Barker omitted the results of the search from the prosecutor or the judge. Indeed, the results from the search were in Detective Barker's Case Report, which he provided to the prosecutor. Dkt. No. 46-1, p. 4 (Pg. ID 1101).

Nevertheless, Detective Barker had probable cause to search and seize the Plaintiff as early as May 22, when he obtained the two eyewitness identifications and learned of the two anonymous tips. Detective Barker did not present the case to the prosecutor until May 28. "Once probable cause is established, an officer is under no duty to investigate further or to look for additional evidence which may exculpate the accused." *Ahlers*, 188 F.3d at 371. "This, however, does not mean that officers may make hasty, unsubstantiated arrests with impunity." *Id*.

In this case, Detective Barker did not make an unsubstantiated arrest. Although the search warrant did not produce any evidence to strengthen Oak Park's case against Jones, it did not negate probable cause. Therefore, Plaintiff fails to demonstrate that omitting the results of the search amounts to Detective Barker intending to mislead.

Plaintiff argues that Detective Barker also failed to mention that Jones' vehicles were at his apartment immediately after a Center Line bank was robbed for a second time. Dkt. No. 40, p. 25 (Pg. ID 808). According to the Plaintiff, "it would have been impossible for Jones to have committed the robbery in Center Line on May 28, 2014 because he would not have been able to get back to his apartment in time, and thus, would have exculpated him from all of the other robberies, including those committed in Oak Park." *Id*. Plaintiff's argument is flawed.

The Plaintiff illogically assumes that evidence in one case, albeit in a different city, is exculpatory in all cases. Most importantly though, Plaintiff again loses sight that this claim depends on him demonstrating that Detective Barker intended to mislead the prosecutor and the judge. The law in this circuit is clear. Law enforcement "is under no obligation to give any credence to a suspect's story [or alibi] nor should a plausible explanation in any sense require the officer to forego arrest pending further investigation if the facts as initially discovered provide probable cause." *Ahlers*, 188 F.3d at 371 (citing *Criss v. City of Kent*, 867 F.2d 259, 263 (6th Cir. 1988)). With the law in mind, omitting the fact that Jones' car was at his home during a Center Line robbery would not have required Detective Barker to forego arresting the Plaintiff. Accordingly, that fact is not "strongly material" to the determination of probable cause. Therefore, Plaintiff's claim, that Detective Barker intentionally withheld material information, fails.

### iii. Reckless Disregard for the Truth

Plaintiff argues that Officer Barker acted with a reckless disregard for the truth by: (1) not comparing Jones' fingerprint to a fingerprint taken from a Lathrup Village robber on March 25; (2) not waiting for Jones' cell phone records prior to arresting Jones; and (3) going against the FBI's instruction to surveil Jones before any action was taken. Neither argument has merit.

"An arrest warrant is valid only if supported by probable cause." *Ahlers*, 188 F.3d at 370. "Once probable cause is established, an officer is under no duty to investigate further or to look for additional evidence which may exculpate the accused." *Id*. at 371. "This, however, does not mean that officers may make hasty, unsubstantiated arrests with impunity." *Id.* "[O]fficers, in the **process of determining whether probable cause exists**, cannot simply turn a blind eye toward potentially exculpatory evidence known to them in an effort to pin a crime on someone." *Id*. at 372 (emphasis in original).

The matter before the Court, however, is not an instance where officers engaged in a hurried or poorly conducted investigation. Detective Barker had sufficient probable cause to sustain Jones' arrest. Plaintiff's arguments about the fingerprint, cell phone records, and additional surveillance attempt to hold Detective Barker liable for evidence which he failed to collect and therefore was unaware. This is insufficient as a matter of law. In *Ahlers*, the Court reemphasized another Sixth

Circuit decision in *Crisp v. City of Kenton*, 142 F.3d 432, 1998 WL 180561 (6th Cir. 1998) (unpublished table decision). Ahler discussed the *Crisp* case as follows:

> Crisp, the plaintiff in that case, argued that the officers did not have probable cause to arrest him because there was information which, if the officers had considered it, would have established that there was no probable cause to suspect Crisp of criminal activity. The panel, however, rejected Crisp's argument, reasoning that "on the basis of the information the officers actually had, as opposed to information they could have had if they had looked at Crisp's identification and believed his story, the officers certainly had sufficient information" with which to establish probable cause.

*Ahlers*, 188 F.3d at 372 (quoting *Crisp*, 1998 WL 180561 at *4). Likewise, on the basis of the information known to Detective Barker, i.e., the eyewitness identifications and the anonymous tips, there is no genuine issue of material fact that there was probable cause to sustain Jones' arrest. *See also Hale*, 396 F.3d at 725 ("Affidavits do not have to be perfect, nor do they have to provide every specific piece of information to be upheld…. The totality of the circumstances test requires us to evaluate the probabilities of finding criminal activities based on the evidence provided in the affidavit, as opposed to requiring that the evidence in the affidavit guarantees the discovery of criminal activity.").

### 3. Fourth Amendment Malicious Prosecution

Plaintiff alleges that the Oak Park officers maliciously prosecuted him without probable cause. Dkt. No. 40, p. 28 (Pg. ID 811). Although the Plaintiff brings this

claim against all Oak Park officers, Plaintiff only makes allegations and arguments with respect to Detective Barker.

"The Sixth Circuit 'recognize[s] a separate constitutionally cognizable claim of malicious prosecution under the Fourth Amendment,' which 'encompasses wrongful investigation, prosecution, conviction, and incarceration.' " *Sykes v. Anderson*, 625 F.3d 294, 308–09 (6th Cir. 2010) (citing *Barnes v. Wright,* 449 F.3d 709, 715–16 (6th Cir. 2006) (internal quotation marks omitted)).

The Sixth Circuit has established that:

> To succeed on a malicious-prosecution claim under § 1983 when the claim is premised on a violation of the Fourth Amendment, a plaintiff must prove the following: First, the plaintiff must show that a criminal prosecution was initiated against the plaintiff and that the defendant made, influenced, or participated in the decision to prosecute. Second, because a § 1983 claim is premised on the violation of a constitutional right, the plaintiff must show that there was a lack of probable cause for the criminal prosecution. Third, the plaintiff must show that, as a consequence of a legal proceeding, the plaintiff suffered a deprivation of liberty, as understood in our Fourth Amendment jurisprudence, apart from the initial seizure. Fourth, the criminal proceeding must have been resolved in the plaintiff's favor.

*Id.* (internal citations and quotations omitted).

Here, Jones relies on his previous arguments—that Detective Barker withheld information and demonstrated reckless disregard for the truth in obtaining the warrant—to argue that Detective Barker lacked probable cause to prosecute Jones. The Court previously found that Detective Barker did not intentionally mislead or

act with reckless disregard for the truth. Therefore, Plaintiff fails to demonstrate a lack of probable cause. Jones' malicious prosecution claim fails.

### 4. Municipal Section 1983 Claim Against Oak Park

Count I of the Complaint alleges that the City of Oak Park is liable under 42 U.S.C. § 1983 for failing to train and supervise its officers so as to prevent the individual officers' alleged wrongful conduct. Dkt. No. 1, pp. 16–17 (Pg. ID 16–17).

"A plaintiff can bring a claim under section 1983 when she is deprived 'of any rights, privileges, or immunities secured by the Constitution and laws,' as a result 'of any statute, ordinance, regulation, custom, or usage, of any State.' " *Doe v. Claiborne Cty., Tenn. By & Through Claiborne Cty. Bd. of Educ.*, 103 F.3d 495, 505 (6th Cir. 1996) (quoting 42 U.S.C. § 1983). A municipal liability claim must be examined by applying the following two-pronged inquiry: (1) Has the Plaintiff asserted a deprivation of a constitutional right; and (2) is the municipality responsible for that violation. *Id*. "For liability to attach, both questions must be answered in the affirmative." *Id*.

In this case, because the officers had probable cause, the Plaintiff failed to demonstrate that the City of Oak Park through its officers deprived the Plaintiff of a constitutional right. Therefore, Plaintiff's municipal claim fails.

## B. State Law Claims

The Complaint alleges four[1] state law claims against the Defendants: (1) deprivation of rights under the Michigan Constitution; (2) malicious prosecution; (3) false arrest; and (4) false imprisonment.

### 1. Violation of the Michigan Constitution

Plaintiff's deprivation of rights claim under the Michigan Constitution fails as a matter of law. The Michigan Supreme Court in *Jones v. Powell*, 462 Mich. 329, 612 N.W.2d 423, 426–27 (2000), confirmed that damages against the state for violations of the Michigan Constitution are generally unavailable. With regard to actions against state officers pursuant to violations of the Michigan Constitution, the Michigan Supreme Court stated the following:

> We agree with the Court of Appeals majority that our decision in *Smith* provides no support for inferring a damage remedy for a violation of the Michigan Constitution in an action against a municipality or an individual government employee….*Smith* only recognized a narrow remedy against the state on the basis of the unavailability of any other remedy. Those concerns are inapplicable in actions against a municipality or an individual defendant. Unlike states and state officials sued in an official capacity, municipalities are not protected by the Eleventh Amendment. A plaintiff may sue a municipality in federal or state court under 42 U.S.C. § 1983 to redress a violation of a federal constitutional right. Further, a plaintiff may bring an action against an individual defendant under § 1983 and common-law tort theories.

---

[1] The original Complaint asserted five state law claims. However, on February 16, 2016, Plaintiff voluntarily dismissed Count IV alleging defamation. *See* Dkt. No. 18.

*Id.* (internal citations and quotations omitted). Here, because Plaintiff has other remedies available to secure damages, i.e., a § 1983 claim, he has no actionable claim for a violation under the Michigan Constitution. This claim fails.

### 2. Malicious Prosecution Pursuant to Michigan Law

Pursuant to Michigan law, "in order to maintain a suit for malicious prosecution, it must be established: (1) The fact of the alleged prosecution that has come to a legal termination in plaintiff's favor; (2) that the defendant had no probable cause; (3) that he acted from malicious motives." *Turbessi v. Oliver Iron Mining Co.*, 250 Mich. 110, 112, 229 N.W. 454, 454–55 (1930). Like the Plaintiff's malicious prosecution claim pursuant to the Fourth Amendment, the Plaintiff's malicious prosecution claim pursuant to state law fails because as a matter of law, the Court finds that there was probable cause to prosecute the Plaintiff.

### 3. False Arrest and False Imprisonment

"To prevail on a claim of false arrest or false imprisonment, a plaintiff must show that the arrest was not legal, i.e., the arrest was not based on probable cause." *Peterson Novelties, Inc. v. City of Berkley*, 259 Mich. App. 1, 18, 672 N.W.2d 351, 362 (2003). Again, in this case, there was probable cause for the arrest. Accordingly, Plaintiff's false arrest and false imprisonment claims fail as a matter of state law.

**V. CONCLUSION**

The facts that Mr. Jones was searched, arrested, jailed, and posted bond, for a crime he did not commit are not lost on the Court. However, based on the law and the evidence before the Court, Oak Park Defendants' Motion for Summary Judgment [34] is GRANTED.

IT IS SO ORDERED.

Dated:     August 30, 2017

/s/Gershwin A Drain
HON. GERSHWIN A. DRAIN
United States District Court Judge